AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Fabio Lanzieri<br><br>*Defendant(s)* | ) ) ) ) ) ) ) Case No. **8:23MJ1349AAS** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __January 2021 - February 2022__ in the county of __Pinellas__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1349 | Conspiracy to Commit Wire Fraud |

This criminal complaint is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Erica Nicewarner, Special Agent, FBI
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: March 29, 2023

_____
*Judge's signature*

City and state: Tampa, Florida

Magistrate Judge Amanda A. Sansone
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Erica Nicewarner, being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND INFORMATION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since March 1, 2020. I am currently assigned to the Tampa Field Division, which is in the Middle District of Florida.

2. In connection with my official duties, I investigate criminal violations of federal laws including, but not limited to, conspiracy, bank fraud, and wire fraud. As an FBI agent, I am charged with enforcing the laws of the United States of America, and possess the authority to request, to obtain, and to execute orders of the United States Courts. I have received extensive training in investigations, particularly fraud investigations.

3. This Affidavit supports an application for a criminal complaint and arrest warrant for Fabio Lanzieri ("Lanzieri"). Beginning in or around January 2021, and continuing through at least May 2022, Lanzieri, along with Robert Ronzio ("Ronzio") and James Council ("Council"), received and divided administrative fee payments made to Honoris Purchasing LLC ("Honoris"), a company established by Lanzieri and Ronzio as a purported functioning Group Purchasing Organization ("GPO"). In connection with the receipt by Honoris of such fee payments, probable cause exists to believe Lanzieri engaged in a wire fraud conspiracy, in violation of 18 U.S.C. § 1349. This Affidavit is intended to show merely that there is sufficient

probable cause for the requested warrant and does not set forth all my knowledge about this matter.

*Group Purchasing Organizations*

4. A GPO was an entity that, in part, helped health care providers (e.g., hospitals, nursing homes, etc.) realize savings and efficiencies by aggregating purchasing volume and using that purchasing volume as leverage to negotiate pricing discounts with manufacturers, distributors, and other vendors (collectively, "vendors") that had entered into contracts ("Purchasing Agreements") with the GPO.

5. The primary manner through which a GPO made its profit was via a percentage administrative fee charged against any sales made by the contracted vendors to GPO provider members ("Participants"), which had correspondingly entered into "Participant Agreements" with the GPO. Thus, once a GPO had negotiated pricing discounts with a vendor, that vendor would forward the pricing discount information to health care product wholesalers that would pass the discounted rate on to the GPO's Participants.

*Victim Company 1*

6. Lanzieri and Council worked as sales and marketing consultants for Company 1, based in Pinellas County, Florida, which was a wholly owned subsidiary of a larger pharmaceutical business. Company 1 manufactured injectable medications. Lanzieri acted as Company 1's president.

2

7. Company 1 had entered into Purchasing Agreements with GPOs, including GPO-1. However, in or around the fall of 2019, a material aspect of the Purchasing Agreement between Company 1 and GPO-1 was terminated. That termination meant that GPO-1 Participants would no longer be eligible to receive pricing discounts on certain Company 1 products from health care product wholesalers. As a stopgap to maintain its provider customer base, Company 1 forwarded competitive pricing discounts for that set of customers that were GPO-1 Participants (hereinafter, "Independent Participants") to health care product wholesalers, thereby eliminating any immediate impact upon said customers from the termination.

*Council and Ronzio*

8. During the wire fraud conspiracy described in this affidavit, Council resided in Hillsborough County in the Middle District of Florida, while Ronzio resided, at times, in North Providence, Rhode Island. Council and Ronzio[1] have both entered into plea agreements with the United States and are cooperating in the ongoing investigation. Said plea agreements include cooperation provisions, such that the cooperating defendants have and are providing information in connection with their roles in the wire fraud conspiracy described in this affidavit in the hope

---

[1] Ronzio has a prior federal felony conviction for wire fraud conspiracy, in violation of 18 U.S.C. § 371, in Case No. 1:14-cr-10363-10. Ronzio pleaded guilty and cooperated in that case, which charged a conspiracy to defraud the Food and Drug Administration. Ronzio was sentenced in February 2022 to time served, with no supervised release to follow.

3

and expectation that doing so will result in the United States filing one or more motions for a reduction of sentence on behalf of each.

## PROBABLE CAUSE

*Overview of the Scheme*

9. In or around January 2021, Lanzieri and Ronzio caused Honoris to be created in Wyoming as a purported functioning GPO. Ronzio opened a bank account for the company.

10. Lanzieri and Ronzio caused a Purchasing Agreement to be created and executed between Honoris and Company 1—notwithstanding that Honoris had no knowing Participants—that was backdated to in or around May 2020. In or around the same time, Lanzieri and Council fraudulently caused Company 1's listed set of Independent Participants to be recategorized as Honoris Participants without their agreement and forwarded that set of recategorized Participants' names and other associated information, such as competitive pricing discount schedules for those Participants, to health care product wholesalers for integration into the wholesalers' sales platforms.

11. Council, in his role as a sales and marketing consultant for Company 1, prepared monthly an administrative fee report for GPOs contracted with Company 1, including for purported GPO Honoris, which contained information related to the total dollar amount of Company 1 product sales made during the month to each GPO's set of Participants, including the Participant set that the conspirators had fraudulently recategorized from Independent Participants to Honoris Participants.

Council then forwarded the monthly administrative fee reports to the Company 1 accounting department, which, per normal operations, calculated and paid to the identified GPOs an approximate 3% administrative fee based upon the total dollar amount of Company 1 product sales to the Participants of each GPO, including Honoris.

12.     Once Honoris received the Company 1 administrative fee payment into the Honoris bank account, Ronzio divided said fee payment into three approximately equal shares, one of which he kept for himself. The remaining two shares were allocated to conspirators Lanzieri and Council and were often distributed to them via ACH fund transfers.

*Creation of Honoris*

13.     In or around early January 2021, Lanzieri sent an email to Ronzio, with subject "GPO Contract," and the attachment "GPO Template 1.docx." The attachment contained a Purchasing Agreement template. The template was for an agreement between Company 1 and a GPO, and the GPO field of the agreement was left blank.

14.     Lanzieri and Ronzio had a pre-existing relationship. Per Florida Department of State, Division of Corporations records (as maintained on Sunbiz.org), as well as information obtained during an interview of Ronzio, Lanzieri and Ronzio had previously created another company, Gru Medical Consulting Group LLC ("GRU"), in 2020. Lanzieri was a listed Manager and Ronzio was the listed Registered Agent and Chief Executive Officer.

15. During an interview of Council, Council explained that Lanzieri facilitated the creation of a GPO contract between Company 1 and Honoris that was signed by Lanzieri and Ronzio in or around January 2021, which was backdated to May of 2020.

16. An open-source search revealed the initial corporate record filing for Honoris occurred on or about January 7, 2021. The Agent Name was Registered Agents Inc., and the Agent Address was 30 N Gould St, Sheridan, WY, 82801. Per Council, Honoris was created in Wyoming through a registered agent to conceal the true owner of the entity.

17. Also on or about January 7, 2021, the Internal Revenue Service sent a letter to Honoris informing Honoris had been assigned Employer Identification Number ("EIN") 86-1295572. The same day, Lanzieri sent an email to Ronzio, with subject "EIN," and attached the IRS letter.

18. Bank of America records reveal that Ronzio opened a bank account for Honoris (account number -6109, the "Honoris bank account") on January 8, 2021, at the financial center in North Fort Lauderdale, Florida. The associated EIN/TIN listed in the Honoris bank documents is 86-1295572. Ronzio further noted that he shared the online login information for the Honoris bank account with Lanzieri.

*Fraud Proceeds Received into the Honoris Bank Account*

19. Council has explained in interviews that, in his role as a sales and marketing consultant for Company 1, he prepared monthly an administrative fee report for GPOs contracted with Company 1, including for purported GPO Honoris,

6

which contained information related to the total dollar amount of Company 1 product sales made during the month to each GPO's set of Participants, including the Participant set that the conspirators had fraudulently recategorized from Independent Participants to Honoris Participants. Council then forwarded the monthly administrative fee reports to the Company 1 accounting department, which, per normal operations, calculated and paid to the identified GPOs an approximate 3% administrative fee based upon the total dollar amount of Company 1 product sales to the Participants of each GPO, including Honoris. Council estimated that, in total, the administrative fees fraudulently paid to Honoris were just over $1 million.

20. Records, documents, and communications (collectively, "materials") provided to the FBI by Council corroborate Council's statements to the investigative team that Council caused administrative fee report information to be submitted to Company 1 for product sales made to the Participants fraudulently recategorized as Honoris Participants. For example, said materials demonstrate that on February 8, 2021, Council sent an email to a Company 1 employee, with subject "Honoris January 2021 Admin Fees $20,128.58," and an attached Excel worksheet titled "Honoris Jan 21 Admin Fees.xlsx." Other materials show that Council submitted like fraudulent fee reports to Company 1 for Q3 and Q4 of 2020—the period captured by backdating the fraudulent Purchasing Agreement between Company 1 and Honoris to May 2020—that calculated Company 1 owed back administrative fees to Honoris of $56,294.29 and $67,986.93, respectively.

21. Honoris bank account statements and other information reveal that on February 11, 2021, Company 1 transferred $144,409.80 ($56,294.29 + $67,986.93 + $20,128.58) via interstate wire to the Honoris bank account. As detailed above, this amount equals the total administrative fees that were purportedly due Honoris as of February 2021 under the fraudulent Company 1-Honoris Purchasing Agreement, previously executed by Lanzieri and Ronzio in furtherance of the wire fraud conspiracy.

22. Over the next year, there were eleven additional wire payments made to Honoris by Company 1 into this account. The payments are summarized in the table below:

| Date of Wire | Honoris Wire Transfers to Company 1 |
|---|---|
| February 11, 2021 | $144,409.80 |
| March 11, 2021 | $18,860.72 |
| April 5, 2021 | $61,610.00 |
| May 6, 2021 | $64,233.95 |
| June 2, 2021 | $65,167.56 |
| August 6, 2021 | $117,409.62 |
| September 10, 2021 | $61,233.63 |
| October 15, 2021 | $56,007.32 |
| November 24, 2021 | $65,776.05 |
| December 1, 2021 | $66,619.44 |
| January 21, 2022 | $154,456.59 |
| February 3, 2022 | $95,710.14 |
| **Total:** | $971,494.82 |

23. Company 1 utilized three bank accounts at separate financial institutions to make the payments to Honoris. One of these accounts was at JP

Morgan Chase bank ("JPMC"). JPMC has explained the wires sent from Company 1's account with them to Honoris would have followed a wire path to at least one of their institution's two primary servers, both located outside the state of Florida. Thus, there were interstate wires sent during and in furtherance of the conspiracy.

*Fraud Proceeds Transferred by Lanzieri to Family Members and Related Companies*

24. Both Council and Ronzio have acknowledged that they utilized interstate wire communications, including email exchanges and text messages, to coordinate their conduct and to exchange Excel worksheets and other information about that conduct.

25. Ronzio has explained in interviews with the investigative team that Lanzieri had online access to the Honoris bank account and would utilize that access to login to the account and forward his share of the fraud proceeds from Company 1 to individuals and entities. In that regard, Ronzio identified for investigators transfers that were sent to one or more accounts associated with Lanzieri, as well as to transfers made to one of Lanzieri's parents and to a Lanzieri sibling's business.

26. Honoris bank account statements reveal that on February 11, 2021, the same day that the first fraud proceeds were received from Company 1 via wire transfer, an online transfer of $15,000 was made from the Honoris bank account to a GRU bank account. Also on February 11, 2021, a wire transfer of $8,484.25 was made from the Honoris bank account to a Company 2 bank account.

27. Information per Sunbiz.org reveals that a company by the same name of Company 2 was created in August 2014 as a Florida corporation and voluntarily

9

dissolved in July 2018. That Florida corporation listed Lanzieri and one of his siblings as Directors. Independently, Ronzio has confirmed that Lanzieri's sibling is associated with Company 2, which is now identified as a Canadian-based company. In all, the Honoris bank account statements reflect approximately $90,000 in wire transfers from the account to a Company 2 bank account.

28. Also on February 11, 2021, a wire transfer of $2,828.28 was made from the Honoris bank account to an account held by a person with Lanzieri as a last name, who has been identified by Ronzio as one Lanzieri's parents. In all, the Honoris bank account statements reflect approximately $25,000 in wire transfers from the account to the Lanzieri parent account.

29. These financial transactions are not all-inclusive of the activity of the Honoris bank account or all-inclusive of the timespan for which the account was open and active. The transactions stated here are included only to establish probable cause of Lanzieri's involvement in the receipt and use of the fraudulent proceeds secured from Company 1 during and in furtherance of the wire fraud conspiracy.

## CONCLUSION

Based on my experience, training, and the information contained in the preceding paragraphs, I submit that there is sufficient probable cause to believe that

Fabio Lanzieri has participated in a wire fraud conspiracy, in violation of 18 U.S.C. § 1349, supporting this application for a criminal complaint and arrest warrant.

FURTHER AFFIANT SAYETH NAUGHT.

*[signature]*
Special Agent Erica Nicewarner
Federal Bureau of Investigation

Sworn to before me over the telephone
or other reliable electronic means and signed
by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

*[signature]* 3/29/23
The Honorable Amanda A. Sansone
United States Magistrate Judge

11